UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| KENNETH KAYE WELLS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of the Social Security )<br>Administration,[1] )<br>)<br>Defendant. ) | Cause No. 2:12-cv-138-WTL-WGH |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Kenneth Kaye Wells requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying Wells' application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The Court now rules as follows.

### I.     PROCEDURAL HISTORY

Wells filed an application for DIB on July 14, 2009, alleging disability beginning February 9, 2008. Wells' application was initially denied on September 30, 2009, and again upon reconsideration on November 4, 2009. Thereafter, Wells requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on October 1, 2010, before ALJ Gary L. Vanderhoof in Danville, Illinois. During the hearing, Ronald Malik testified as a vocational expert and George Michael Decherd testified as a medical expert. On December 30, 2010, the ALJ issued a decision denying Wells' application for benefits. The Appeals Council upheld the

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration after this case was filed. She is therefore substituted as the Defendant in this case pursuant to Federal Rule of Civil Procedure 25(d).

ALJ's decision and denied a request for review on April 5, 2012. This action for judicial review ensued.

## II.    EVIDENCE OF RECORD

The relevant medical evidence of record follows.

### A. Dr. Bassam Helou

Wells' treating physician, Dr. Bassam Helou, completed a Multiple Impairment Questionnaire for Wells' counsel in 2009. Dr. Helou noted that he had treated Wells for more than ten years. Dr. Helou described Wells' diagnoses as hypertension, hepatitis, gout, and chronic back pain. Dr. Helou opined that "in an eight-hour day" in a "normal competitive five day a week work environment on a sustained basis," Wells was only able to sit for less than one hour, and stand or walk for less than one hour. Tr. at 261. Dr. Helou further opined that Wells could occasionally lift or carry up to ten pounds and noted that reaching or lifting repeatedly would aggravate Wells' back pain. Dr. Helou also commented that he "was amazed [Wells] was able to work as long as he did." *Id.* at 265.

In a letter dated September 16, 2009, to Wells' counsel, Dr. Helou repeated that Wells suffers from hypertension, chronic back pain, hepatitis, and gout and that he had been treating Wells for many years.[2] Tr. at 270. He also mentioned that Wells had a history of renal cell carcinoma, but was in remission. Dr. Helou further opined that Wells was "limited to lifting anything over 20 [pounds], bending repeatedly, [and] standing or sitting too long because it aggravates his pain in his back." *Id.* Dr. Helou also noted that Wells

> would be a candidate for disability. He has chronic back pain, has had many
> surgeries that were unsuccessful in relieving his symptoms. He is on pain
> medicine daily to try to make his pain tolerable with minimal relief per his

---

[2]According to Dr. Helou, however, Wells did not treat with him between January 9, 2007, and March 2, 2009, because he did not have insurance and was trying to avoid doctors.

>  account. He will not be able to meet the standards of employment due to the
>  frequency of changing positions needed to keep his pain controlled.

*Id.* Since Wells' back surgeries, Dr. Helou has treated Wells' back pain mostly with OxyContin.

### B.  Dr. Robert Blok

On September 21, 2009, Wells was referred to orthopedic surgeon Dr. Robert Blok for his back pain. Dr. Blok noted that Wells complained of back pain that had worsened over the last several years and numbness in his left thigh. Dr. Blok assessed spondylosis, lumbar radiculopathy, sciatica, and back pain. Dr. Blok's notes indicate that Wells was "not interested in having any surgical procedures at [that] time." Tr. at 296. Dr. Blok recommended a "conservative approach," as long as Wells' good days outnumbered the bad, and medication to treat the pain. *Id.*

### C.  Dr. Robert Chua

On February 17, 2010, Wells began treating with Dr. Robert Chua. Wells' complaints of back pain continued, and Dr. Chua regularly prescribed OxyContin to treat the problem.

On June 23, 2010, an MRI of Wells' right shoulder revealed a high-grade SLAP tear[3] extending into the proximal biceps tendon, tendinosis, and acromicoclavicular degenerative changes.

On August 26, 2010, Dr. Chua completed a Multiple Impairment Questionnaire for Wells' counsel. Dr. Chua noted that Wells suffers from low back pain, right leg pain, right shoulder pain, hypertension, gout, and hepatitis C. Dr. Chua also opined that Wells was able to sit for three hours, and stand or walk for one hour in an eight-hour workday. Dr. Chua further opined that Wells could occasionally lift or carry up to five pounds.

---

[3] SLAP stands for Superior Labrum from Anterior to Posterior. Wells' Br. at 5, n. 15, Dkt. No. 13.

### D.  Dr. Jeffery A. Bollenbacher

On August 4, 2010, Wells was referred to orthopedic surgeon Dr. Jeffery A. Bollenbacher for his right shoulder pain. Dr. Bollenbacher confirmed a SLAP lesion, an AC joint sprain/strain, a supraspinatus sprain/strain, and biciptal renosynovitis. Dr. Bollenbacher recommended a home exercise program and ice to treat the pain and swelling. Wells complained to Dr. Chua, however, that the exercises made his back pain worse.

### E.  Physical RFC Assessment – Dr. Mangala Hasanadka

On September 30, 2009, Dr. Mangala Hasanadka reviewed Wells' medical records and completed a physical RFC assessment. Dr. Hasanadka opined that Wells was able to lift and carry twenty pounds occasionally and ten pounds frequently; stand or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; and occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. Dr. Hasanadka also opined that Wells was credible. *Id.* at 307.

### F.  Testimony of Dr. George Decherd

Dr. George Decherd testified as a medical expert at Wells' hearing before the ALJ and opined that Wells could lift ten pounds frequently and twenty pounds occasionally; stand or walk for four to six hours in an eight-hour workday; and sit without any limitations. Dr. Dechard also noted that Wells should avoid climbing ladders, ropes, and scaffolds, as well as dangerous heights and moving machinery.

### III.   APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least

4

twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

On review, the ALJ's findings of fact are conclusive and must be upheld by the court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and the court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v.*

*Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in her decision; while "[he] is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1177.

## IV.  THE ALJ'S DECISION

At step one, the ALJ found that Wells had not engaged in substantial gainful activity since October, 2008, eight months after his alleged onset date. At step two, the ALJ concluded that Wells suffered from the following severe impairments: disorders of the back, obesity, and right shoulder pain. At step three, the ALJ determined that Wells' severe impairments did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Wells had the residual functional capacity ("RFC") "to perform light work . . . with the following limitations: stand/walk 4 to 6 hours in an 8 hour workday; no climbing of ladders, ropes, or scaffolds; no work at unprotected heights or around dangerous moving machinery; and occasionally climb, balance, stoop, kneel, crouch, and crawl." Tr. at 24. Given the RFC finding, and taking into account Wells' age, education, and work experience, the ALJ determined at step five that Wells could perform jobs existing in significant numbers in the national economy, those being an office helper, a ticker seller, or a cashier. Accordingly, the ALJ concluded that Wells was not disabled as defined by the Act from February 9, 2008, through the date of his decision.

## V.  DISCUSSION

Wells advances several objections to the ALJ's decision; each is addressed below.

### A. Weight Given to Treating Physicians

Wells argues that the ALJ failed to appropriately weigh the opinions of his treating physicians. The Court agrees.

> A treating physician's opinion that is consistent with the record is generally entitled to "controlling weight." 20 C.F.R. § 404.1527(d)(2); *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010). An ALJ who rejects a treating physician's opinion must provide a sound explanation for the rejection. 20 C.F.R. § 404.1527(d)(2); *Campbell v. Astrue,* 627 F.3d 299, 306 (7th Cir. 2010); *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007).

*Jelinek v. Astrue,* 662 F.3d 805, 811 (7th Cir. 2011). "'If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011) (quoting *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)).

*1. Dr. Chua*

Wells argues that the ALJ completely ignored the medical opinions of his treating physician, Dr. Chua. Wells met with Dr. Chua on a monthly basis beginning on February 17, 2010, but there is no mention of Dr. Chua or his opinions (e.g., Dr. Chua's opinion regarding Wells' limitations) in the ALJ's decision. As a result, this matter must be remanded to the Commissioner. On remand, the ALJ must consider Dr. Chua's opinions regarding Well's diagnoses, symptoms, medications, and limitations, and perform an appropriate weight determination as to those opinions.

*2. Dr. Helou*

Wells also argues that the ALJ did not properly credit Dr. Helou's opinions. In September, 2009, Dr. Helou opined that Wells was a "candidate for disability" and that he would "not be able to meet the standard of employment" because of his pain and limitations. Tr. at 270. Because the determination of disability is reserved to the Commissioner, the ALJ determined that Dr. Helou's opinion was not entitled to any weight. It is unclear from the record, however,

7

whether the ALJ discounted all of Dr. Helou's opinions regarding Wells' diagnoses, symptoms, medications, and limitations, or whether he simply discounted Dr. Helou's opinion regarding Wells' candidacy for disability.

On remand, the ALJ must state what weight, if any, is given to Dr. Helou's opinions regarding Wells' diagnoses, symptoms, medications, and, especially, his limitations. If the ALJ rejects the treating physician's opinions, he must specifically consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion.

## B. Credibility Determination

Wells also argues that the ALJ failed to properly evaluate his credibility. In determining credibility, an ALJ must consider several factors, including the claimant's daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, and justify the finding with specific reasons. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). "Furthermore, the ALJ may not discredit a claimant's testimony about [his] pain and limitations solely because there is no objective medical evidence supporting it." *Id.* (citations omitted). District courts "afford a credibility finding 'considerable deference,' and overturn [a finding] only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 36 F.3d 751, 758 (7th Cir. 2004)).

Wells faults the ALJ for using boilerplate language to explain his rejection of Wells' reported symptoms. Specifically, the ALJ stated that Wells' "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity." Tr. at 25. The Court shares in the sentiments expressed in recent Seventh Circuit opinions regarding the meaninglessness of certain

8

Social Security "templates," such as the one used here. *See, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012).[4]

Because the ALJ's credibility determination is not justified by specific reasons, the ALJ must reexamine Wells' credibility on remand. The ALJ is instructed to consider Wells' daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and/or limitations and explain whether Wells' subjective complaints are credible. If the ALJ concludes that Wells is not credible, he must provide specific reasons for his finding. *See Villano*, 556 F.3d at 562 (ALJ may not discredit claimant's testimony solely because there is no supporting medical evidence).

## VI. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **REVERSED and REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 06/20/2013

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

[4] The Seventh Circuit criticized this language as meaningless boilerplate seen frequently in decisions. It further criticized this template as unhelpful and explained that it backwardly implies that the ability to work is determined first and is then used to determine the claimant's credibility. *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (quoting *Bjornson*, 671 F.3d at 645 and citing *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010)). Credibility findings must have support in the record, and such hackneyed language seen universally in decisions adds nothing. *Shauger*, 675 F.3d at 694 (citing *Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011) and *Parker*, 597 F.3d at 921-22).